Okay, the next case on the call is 513-0193 Regions Bank v. Joyce Meyers Municipal. Is the counsel ready to proceed? You may proceed, counsel. May it please this court, good morning, your honors, counsel. I'm here before you on a very tragic case. This case involves the trial court's dismissal of plaintiff's complaint based upon defendant's 2615 motion to dismiss. The trial court dismissed it. I believe that the dismissal was erroneous. The trial court improperly applied its application of duty, foreseeability, and involuntary undertaking as it relates to the Joyce Meyers Ministry, Econ's policy, and Chris Coleman's use of the company laptop computer. What happened in this case is that the Ministry gave Coleman the keys to the henhouse. And by giving him the keys to the henhouse, Coleman used the Joyce Meyers Ministry, Econ's policy as a direct conduit and vehicle to plan and commit the murder of Sherry Gabbitt and Garrett Coleman. So after they gave him the keys, they knew of certain facts which I want to reiterate. Now the Ministry wants to turn its back on what it knew and say that they didn't have a duty and that what happened was not foreseeable. What's relevant in this case, Your Honors, is that the Ministry knew that it was company property that Chris Coleman was using as his vehicle to plan and commit the murders of his family. Coleman, before he was doing this, was engaging in an extramarital affair. The Ministry was aware of this extramarital affair. There were death threats that Chris Coleman made to himself and his family through the company laptop computer. The Ministry offered to provide security services to Coleman and his family as a result of these threats. They provided and offered counseling services to the family based upon their knowledge of the extramarital affair. At what point is there an agreement that the Ministry became aware of the extramarital affair? At least my understanding is November of 2008. The woman that Mr. Coleman was having the extramarital affair with, I can't remember her last name, but now Tara, she began traveling with Chris Coleman to various functions of the Ministry because Mr. Coleman, if you recall, Your Honor, was the head of security for Joyce Meyer Ministries. And so as a result, he would travel with the Ministry wherever they had to go. They have denied, however, the Ministry has denied that they had knowledge of the extramarital affair. Is that correct? Oh, they've denied it. I mean, they can deny it, but however, they had knowledge that Mr. Coleman was traveling with another woman, Arizona, Texas. I don't remember all of the states that he traveled with this woman. But Dan Meyer had implicit knowledge that Mr. Coleman was traveling with another woman. And as you all know also, the Ministry has a policy of no extramarital affairs. You cannot have one and continue to work in the Ministry if you do that. Mr. Romanucci, one of the things I'm curious about is all of the facts. Why are we looking at all these facts? This is a 2-615 motion, isn't it? It is. And has the defendant even answered this complaint? No. So as I was reading through these briefs and looking at the record, I'm thinking to myself, why are we talking about all these facts? I don't see a motion for summary judgment. I don't see an answer. I see nothing but a motion to dismiss on 615. It's a 615. And in your first amended complaint, I don't mean to interrupt you. No. But in paragraph 63, you plead or at least attempt to plead, I think, a voluntary undertaking under a restatement. Yes, under 324. Okay. Have you also, in your judgment, pled any voluntary undertaking under 317? I did. Okay. Which is recognized in Illinois. Okay. So perhaps somebody during this argument will be able to explain to me why we're all off into all these facts. I don't know what we should be. I don't know what we should be, but the facts became an issue. The facts became an issue for the trial court. The trial court made the facts an issue. So, yeah, maybe I fell into that trap. You would agree with me that this court is bound by the wording of your complaint, your first amended complaint, and we have to determine whether, under any circumstance, you could plead a course of action. That's what's before us today. That is correct. And that's the only thing before us today. That is correct. Whether or not we have sufficiently pled a cause of action to proceed where the defendant can answer the complaint, and then after that point there may be, as you know, we could have a 2619 motion or a motion for summary judgment once discovery is complete. But we're at the 2615 stage. Have we pled enough facts to state a cause of action? Any cause of action. Correct. Okay. I'm sorry to interrupt. So, if I may, the application, Your Honor stated it correctly. It's either 317 or 324A. Have we pled enough facts to satisfy whether or not, in this case, the Joyce Meyer Ministry had a duty to control Chris Coleman or whether or not the ministry voluntarily undertook a policy that it negligently failed to perform? That is what should be before this court. And it's our contention that we sufficiently pled those facts under both. But we don't need to show both, just one. So with respect to 317, if you look at the comments of 317, and I don't like to do this, but one of the comments on 317 states, it does state that the mere fact that the servants are using the master's chow dangerously or misconducting themselves upon the master's premises is not enough to make the master liable. It is necessary to show the master knew the practice and that he did not take the appropriate steps to stop them. Or, at least that he reasonably should have discovered them. And that's the issue here. Because I can't stand before you and tell you that the ministry knew that Mr. Coleman was going to commit this heinous act. However, should they have reasonably discovered, as a reasonably prudent person, should they have discovered that Chris Coleman, based upon the facts alleged in the complaint, discovered that there was something that Chris Coleman was doing. And I believe that we have met those four factors pursuant to section 317. Did anybody, I couldn't see this in the brief, so maybe you can correct me. Did anybody cite the Keegan versus Woodman of the World Insurance Company? I do not believe that we did, Your Honor. Okay. I'll let you know. It's found at 541 Northeast 2nd, 735. Just for, and after looking at that, Mr. Justice, if they would need more time, I would be willing to give each side 14 days to supplement their pleadings if they need more time after that. Judge. Go ahead. Thank you, Your Honor. 14 days to respond. 541 Northeast 2nd, 735. Right. Yes. 14 days to respond, you said. If you need it, after you look at it. I need to surprise people. No, I will look at it and make an appropriate response. So under section 317, I believe that we met the four-prong test of Coleman being an employee, thereby creating a master-servant relationship, and Coleman used the ministry laptop, the Senate received the death threats from. Number three, that the account policies that Joyce Meyer Ministry had established, that it had control not only over Mr. Coleman, but also his laptop and his e-mail account, and there's no question that the ministry knew of the death threats. So based on those four points, it's our contention that he pled sufficient facts to survive the 2016 motion. Mr. Romanucci, you pled a case from New Jersey. Yes. Where they were actually committing a crime involving pornography. Right? Are you familiar with that case? Yeah. The Doe versus. Why do you think that's so close to this case? As far as a pleading point of view, I don't care about the facts. I care about what you pled in your complaint. Well, this is an emerging area. Craigslist, Match, those aren't part of this case, but we know that there are cases pending out there because of what's happening with electronic communication. New Jersey happened to be, is the only case that we could find that most closely resembles anything that we have, that parallels what we have here in Illinois, because we don't have law. And I know the ministry is going to talk about, there's no law, there's no law. And they're right, because this is emerging. It doesn't matter that we've had the internet for 20 or 25 years. This is still an emerging area of law determining whether or not an e-communication provider or servicer has a duty based upon either what it knows or should know to victims. Do you think pornography is different than what was going on here? I mean, was this a crime, what he was doing? Well, I understand what you're saying, Your Honor, and pornography is not murder. However, there's crime. This man in Doe was storing child pornography on his computer. In this case, Chris Coleman was using his computer to basically effect a crime. He was perpetuating a crime. So, it's just like the telephone lines. If you make a death threat over the telephone lines, that is a criminal offense. So, in parallel, from a pleading standpoint, between pornography and murder, although they are two very different crimes, and both disgusting, however, it's a parallel crime. So, in the Doe case, the court found, now the difference, I do want to point out the difference in Doe, was that the employer was aware, or somebody in the employer was aware of the pornography. So, in the same thing, in this particular C-suite, in the Joyce Meyer C-suite, which Dan Meyer is one of the C's, he's a corporate head. He was aware of the death threats. He was aware of the extramarital affair. He was aware of all the facts that we're not supposed to talk about. But he had enough implicit knowledge, imputed knowledge, to make him aware that something should be done here. He should have acted, the ministry should have acted as a reasonably prudent person did, which in Doe, that's what they failed to do. They failed to act. And that's why the New Jersey Superior Court found liability in that case. But I believe that's where the problem is. Now, the court made, the trial court made a very big issue out of the foreseeability. And I don't know that foreseeability comes into question in this case yet, because Illinois recognizes first meeting duty, and they look to foreseeability to see if there's a duty. But since foreseeability has been deemed a jury question, I don't know that the court was able to make that leap of faith, look way past the duty that we've established under 324 or 317, to say that it was, in his mind, completely unforeseeable for Chris Coleman to commit the murder. Now, we have a separate argument on foreseeability that we found direct foreseeability, as opposed to what a reasonably prudent person would find reasonable. But I believe in this case, Your Honor, that foreseeability should be set aside as a question for the jury, and that we should concentrate on the duties established under 317 and 324. I also saw in your complaint at least a suggestion that you may be relying on the restatement, which is a duty to protect endangered employees. Now, it's my understanding that Mr. Coleman was making the death threat against himself. It was more generic. At least that's what I'm seeing. Yes. Is that true? Yes. Okay. However, the ministry undertook, they undertook to provide services not only to Coleman, but to his family also. Right. But it seems that there is a duty under the restatement to protect an endangered employee, if you know that the employee himself or herself is in danger. Yes. I think you cited it as 521 in your brief, but it's actually 512. So do you have any argument on that per se, that particular restatement, other than the other two you've been talking about, 317 and 524? Do you have anything you want me to say? No, I don't have anything else. I just want to give you that opportunity. I appreciate that. I have nothing more to add. I just wanted to ask about that one. Sorry to interrupt. So, no, I mean, so based upon at least 317, had the ministry done anything at all which would have resulted in diligence, that would have satisfied its duty to investigate, knowing that the threats were coming from their computer, and that they had control over the network, which is part and parcel of one of the requirements of 317. On our way down here yesterday, I was driving with one of my law clerks, and he's not familiar with the case because he's fairly new, so I thought it would be good to use him as a sounding board. And I asked him, I literally said, I said, Marty, I go, what would you do? How do you feel about if you had come to me and somebody had sent you a death threat, either to you or your family, on equipment that the law firm owned or possessed? What would you feel my obligation or my duty to you would be? I thought his answer was perfect. He said, well, I wouldn't expect you to find who did it, but I certainly wouldn't expect you to open up your equipment to the police and help find people. And that's what we're talking about here. They're reasonably prudence. And that's what's required under 324. When you voluntarily undertake to create an e-com policy, and you talk about that anything that you do on that network is yours, meaning the ministries, that you possess it, you own it, you have control over it, that's what the law requires, and that's the noble standard that I'm asking you to apply. And this is, I'm not saying that this is easy. This is tough because this case, depending on how you decide it, could create some semblance of new law in this state. And that's what's so hard. But it's not hard because this is an emerging area. And because it is an emerging area, we have to create these laws to have an understanding of what to do. I don't need to reiterate the cases that apply, but there's only one case from this district that really is close, and that's the Vaughn case. I don't know that I need to speak to the choir on this one and reiterate the facts in Vaughn. But in Vaughn, they raised enough facts to make it a jury issue. It's a little past our point, but there were enough facts in Vaughn, and that was a very similar case in terms of who had control over the property and what occurred. It was a crime. So if we apply Fetzer and Vaughn to this case, the rule would be that because J&M voluntarily chose to undertake the responsibility to perform its own security services, it knew of the death threats coming from its company equipment, it exercised control and ownership over the policy, laptop, and e-mail account of Goldman. The ministry should be held liable if it can be found that J&M negligently performed these duties. And because our allegation is that they failed to take any responsive action after they knew of these death threats, that they should be held accountable, and that we have fled that sufficiently in our First Amendment complaint to survive the 2615 motion. Their duty is based on knowledge. They did nothing after they were aware of this in the trial court area dismissive plaintiffs. Thank you. Thank you, Governor. I have a bad back, Mr. King, so pay no attention to the man behind the curtain. Good morning, Your Honor. May I please report to the counsel? I would like to address, if I may, Your Honor, your question initially. Two questions before I get started in the body of my argument. The question about why are these facts being bandied about? Generally speaking, they're being bandied about because attached to the amendment petition once the case had been initially thrown out on the 2615 motion was some transcripts from the underlying criminal trial. So we have sort of a unique case here in which we've got sworn testimony that's available to the court at the beginning of the case. Plaintiffs did that. Now, we're not really interested in arguing those facts because I don't think they're necessary in order for the court to rule here today. But the one fact that we did ask the court to take judicial notice of, which implicates the Doe case, which in that particular circumstance you'll note the New Jersey court's ruling, which is circumstances much dissimilar to ours, but in which you have a situation where somebody's using a workplace computer at the workplace in clear view of employees and without any dispute known to the employer to be engaging in criminal conduct. The New Jersey court says, well, you know, we're going to impose at least this duty on the employer, and that is to contact the authorities. And so what we asked the court to take judicial notice of, the lower court in this particular case, was the testimony that at the time the threats were received, the authorities in Illinois were contacted and were involved in an active investigation of the source of these threats. How can we take judicial notice of that under 2615? I mean, there's no way to do that that I'm aware of. Can you tell me? We cited some in our initial briefing to the court where if it's an undisputed fact that neither side would dispute, and they raised no dispute to that particular issue at the time of the motion to dismiss, that the court could take judicial notice of sworn testimony from another proceeding. I'm sorry. The problem that I have with that is if you have one fact that's not in dispute, that doesn't mean that there's more explanation around the other facts. For example, I've seen that you stipulated that Daniel and Joyce, in order to get them dismissed, were employees, agents, and basically officers. Thank you for that one. Of the Joyce Meyer Ministries. So that's something that we could take judicial notice of because it's an agreed to stipulation in the record. But I can't even take notice of that at this point in time because it's not part of this motion. I mean, unless you can give me some authority that says I can do that, I mean, you know, it's not a summary judgment motion. It's not. That authority is not contained in our appellate report because it's not raised, but I think there's some authority cited in our 2615 motion and brief before the court as it relates to judicial notice. Let me ask you this. Their complaint says that you had, you meaning JMM, had an equality policy. Yes. In one of the briefs, it sets out the policy. Why should I look at that? That's going to be the subject of a very hot dispute. What does it mean? You know, what was it supposed to do? Why do I need to do that now? Well, I think they had to plead some set of facts. Well, they did. They say you had a policy, and this was the thing. You haven't denied it because you haven't filed a responsive pleading. All you've done is say this complaint under any set of circumstances could not possibly allow a plaintiff to proceed. Well, because the reason they have to and the reason why that's important at this stage and why Your Honor should consider the body of the economy is because it's not enough. If in Illinois it were sufficient to plead, they have policy, and that would create some duty on our part, I would agree with them. But that's not the circumstance. Well, they've pleaded more than that, though. And I'm sure you're going to deny that policy. Where are you in practice? Prior to Illinois. Oh, okay. I thought I guessed. You're a pro-Hawken. Yes. But anyway, no disrespect, really. All I'm saying is that you had alternatives, for example. We have in Illinois what's called the Bill of Particulars. You could have done some other things, but they have pled that you had a policy. And every time I say you, not you, Mr. King, but that this ministry had a policy, that they did X, Y, and Z. They undertook certain activities, which you haven't denied yet. I have to assume that they're true in the complaint. And that's why I'm saying, why should I look at all these facts that are floating around these briefs? That's what's confusing me. Again, the pleading that a policy exists is not sufficient under Illinois law. We have to understand what's the baseline that we're dealing with. The baseline in Illinois law is, look, we're not responsible for the criminal acts of a third party, except on certain recognized exceptions, one of those being an undertaking. So when they plead to have a policy, that's not sufficient to raise a duty on our part. They have to plead that the policy is somehow an undertaking. We are undertaking, and not just any undertaking, an undertaking to provide for the security or the protection of some individual to which we would ordinarily have no duty. I agree with you. The duty exceptions are very narrow. Very narrow. But in paragraph 63 of their complaint, they plead that JMM undertook gratuitously or for consideration to render services for the protection or safety of these individuals who are now deceased. Including but not limited to rendering security services, such as stationing security at the residence, installing a security alarm, installing surveillance equipment. And then in their other paragraph, 66, they talk about all of the ECOM policy that you had in place and how you were negligent in failing to do, you know, 15 paragraphs worth. And again, Your Honor, with regard to the security system and the other allegations that I'm pleading, I can appreciate, you know, if we were to hear all those today, I might have some significant issues. But they abandoned those during the hearing of the motion of dismissal and have focused only upon ECOM policy. They've dismissed some of these allegations? They've dismissed them, but they abandoned them in their arguments. And the reason they abandoned them is simply simply are just not true. Now, again, we're not here to argue defense. Well, maybe they didn't have time. I don't know. Well, I don't know. But what they argued in their response to our motion of dismissal is, hey, look, that what we have here is we're fitting into this one narrow category. They essentially abandoned all the arguments with regard to any other exception. They've chosen the one exception that they believe they can get to, which is this undertaking. And they've gone and exclusively relied upon the ECOM policy. Now, again, in my view, based upon Illinois law, and this is longstanding Illinois law, they can't get there unless they establish that this policy is somehow an undertaking and not just an undertaking for any purpose. But an undertaking for some specific purpose having to do with security and protection. And that they have to establish the limits of that undertaking. And I think you have to plead that. You have to well plead that. You just can't simply say, well, it exists. And so I believe the trial court was right in taking a look at that and basically saying this is not foreseeable as it relates to an additional basis for creating some duty which we all agree does not exist under Illinois law unless you fit into one of the exceptions. Now, think about the policy implications of what they're asking you to do. The fact of the matter is they're suggesting to you that if you have an ECOM policy, which we all know why we have ECOM policies, and that is you've got this balancing between trying to preserve the integrity and the reputation of your business or ministry to balance against the privacy interests of your individual employees. And so you adopt these policies for the purpose of saying, look, I can look at your stuff if I want to. But if you're doing stuff that I want to appreciate, you can't come in and say, well, that's my private stuff. Why are you looking at it? Think about the policy implications of creating a duty. What essentially they're asking you to do is to say, look, you're under some obligation. If something bad happens and you have any knowledge of it at all, you're under the responsibility to not only go and look, but then to further investigate based on what you see. Nocturnal police investigate, determine what the source of those things are, and then do something about it. If you're going to create that duty on the part of employers, you better give them the ability to do it without facing litigation from the other side, which is you are invading my privacy as an employee. And you have no right. Can you imagine the implications of what they're suggesting to you, what they wanted us to do? Supposedly, and I can't disagree more with the facts, but I don't want to argue them. So I want to suggest you take the facts in a light most favorable to them. Just agree with them. Let's just say we knew about the affair. Let's just say that we knew about the threats. Let's just say that we even knew that he was sending them through. Can you imagine what would have happened had we done what they asked us to do? I'm sorry. What was the third thing that we're assuming that he was saying? That we knew he was sending the threats to himself. Really? Okay. Let's just assume for purposes of this argument that we knew all three of those factors. We didn't, but let's just assume for purposes of this argument. This is what they would have us to do. They would have us to go investigate, determine that, go to the man's wife and children, suggest to them that those three factors create a risk of harm for them, and tell them, we think you ought to do something about this. Now, I can well imagine we would have been sued had we done that for invasion of privacy or false light invasion of privacy. I don't understand where your argument is because you had a policy that said that. Let's suppose you had no policy. Haven't the courts already spoken on Internet use in an employer's space as being non-private? The courts have spoken and continue to speak, and litigation continues. But the difference in your example is you had a policy. We had a policy that allows us to monitor. It has a whole lot more than that in it. I mean, just because I don't want to consider it. I read it. It has a whole lot more than that. But more importantly is when I think about a duty in Illinois, we have to weigh the burden on imposing that duty. So what is the burden if you had acted reasonably to find the IP address of who was sending that? Do you consider that a big burden? Well, I can suggest. And, you know, that's the Nelson case, and I understand that. I think it's a huge burden. Do you think it's a huge burden? I do think it's a huge burden because I know what happened in this case. Or the burden of turning it over to the police or contacting the police. Do you think that's a huge burden? Of turning it over to the police? I don't think that's a huge burden, but that wasn't the question. But that wasn't done? Yes, because I know what happened. And I know what it took. Since I went through the entire criminal proceeding and cooperated with the police in every regard to try to assist them, I know what it took for them to identify that IP address. I understand what it took. I know the weeks and sheer thousands of dollars that were implicated in doing that. So, yes, is it a great burden? I think it's a tremendous burden. But, again, if you're going to place that sort of burden on people simply because they're using computers, I mean, can you imagine that we would be here today if we were 30 years ago and what we had here was an employee who sat down at his desk, penned a threat to himself, stuck it in the employee mail room, and then went and killed his wife and children. Would we be here today? Would we be here arguing this simply because he sat down at his desk at our place of business and wrote out a threat to himself that we had some obligation to then go hire a handwriting expert, come in, take a look at what it is that he wrote to himself? No, I don't think you would. I'll answer you right up. My big concern continues to be all of these allegations that the ministry, to put it simply, was messing in his business. I mean, you're going to get counseling because you don't like he's having an affair. You're going to provide security for him. I mean, you're really taking a lot of steps here. You're not just sitting back for somebody who writes a note in a mail room. And it's very gracious that your client did that. I'm not being disrespectful. It just seems like they were really in his business. So to say, oh, now we're going to do all this, but we didn't undertake anything. We didn't mean to undertake anything. That's where I'm having the problem because they did take so many steps. They were so involved in his life. That's where I'm having the problem. Well, with all due respect, again, I don't want to argue the facts, but we didn't know anything about the affair and the offering of counseling by a ministerial organization to one of its members. Please don't stick us in that category where no good deed ever goes unpunished. The fact of the matter is offering somebody counseling because they're having their difficulties is a far cry from creating a duty on the part of the ‑‑ I mean, we wouldn't put that burden upon a counselor. If they had come in and indicated, hey, look, I'm having an affair to a licensed counselor, and, by the way, I'm also trying to make myself more important at work and I'm sending death threats to myself, would that person have been obligated to do further investigation? I don't think we would want to ‑‑ No, because you offered security to this person. No, we did not. You did not. Well, it's pled. I understand it's pled. I understand that. The fact of the matter is, as I said, if we were here today and they were going to stand on that plea, that is, if we offered some security services, I would readily suggest to you that we might have an issue just as it relates to a 2615 motion, but they abandoned that because it's not true, and the reason that we all know it's not true is because we all sat through the criminal trial and there's sworn testimony that, yes, hey, do you need something security‑wise? Answer, no. The police have a handle on it. So that's basically where we are, and I think the issue here is ‑‑ Then why didn't you file a motion that would have been allowed to pull all those facts in? Why this motion? Please. Why not a summary judgment? Well, Your Honor, we believed that we had a 2615 motion. Obviously, the trial court agreed with us. But he said it was razor thin, didn't he? He did. Because he was very unsure and kicked it out of here. That's what he said. And had he denied us, we may have chosen some other avenue. I think that we would have. Yes, I thanked Judge Aguirre for that. I'll say that publicly. He said he was kicking it up to us to decide. I just think that the underlying basis for the reason why he sustained it, the basic black letter law here in Illinois doesn't need to be modified based upon the allegations in this case, and the fact is we don't fit into any of these specified perceptions. And the only way we do is for this court to reach out and grab a case like Doe from New Jersey and simply make it new law in Illinois. And with all due respect, I would suggest that that would not be a good thing. Here or in Oklahoma, I guess. No, ma'am, not anywhere. Thank you. Rebut. I first want to address Mr. King's discussion about the econ policy. You know, he keeps referencing that the creation of the policy does not create the duty. And if you assume that to be correct, you have to look at the policy and what the policy says. They establish control with their policy. They own the e-mail. They own the laptop. They employ Mr. Coleman. So the policy in and of itself doesn't create the duty, but certainly the control that they exercise over all of those that I just mentioned does create the duty based upon the facts that we've pledged. And, Mr. Romanucci, for the record, I do want to correct myself in that the policy is pled in your complaint. It's pled in full. Well, I'm not sure in full, but there is a majority of the policy pled on pages five and six of your complaint. So I apologize for that error. Understood, Your Honor. Sir, are you familiar with the Simpkins versus, I believe it's AC&S, the asbestos case that came down last year from the Illinois Supreme Court? And it's a negligence case, and I authored it, and the court reversed me. And the theory was that the employer had a duty based on foreseeability to protect family members from mesothelioma. They were washing the laundry. Was that the clothes case? Yes, the laundry case. Your Honor, I can't remember. Well, I was trying to kind of compare some of the public policy questions in that, and the court came down that in the negligence setting that it was too much of a burden on the public. They took it away. I guess the upshot was that this court thought it was a jury question, and the Supreme Court thought it wasn't, that it was not foreseeable that the employer would know that this injury could result. So I guess you haven't considered that. I haven't considered it, but just hearing what you've said, for my recollection of the bare facts, I would respond with 317. I would respond with the restatement of Clause 317 to what you just said, Your Honor. And that's based upon what I've already said, the duty of the master to control the actions of the servant with activities outside the scope of his employment. Yeah, that wasn't involved in this case at all. And I think that's where maybe we can draw a distinction between Simkins and this, is that clearly when the victim, meaning the injured worker who developed the mesothelioma or had the asbestos fibers on his clothes,  so I think we can distinguish Simkins with Coleman on 317. Okay. Thank you, Your Honor. Thank you, counsel. Case will be taken under advisory. Oh, you want to add any more? No, I just wanted to ensure that we have 14 days to file a response. Thank you. Case will be taken under advisory. We are excused. And I will take a short recess.